IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT M. MUMMA, II, ET AL. | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 09-4765 |
| WACHOVIA BANK, N.A., | : |
| a/k/a WACHOVIA BANK | : |

## MEMORANDUM

**SURRICK, J.**                                                    **MARCH  2  , 2016**

Presently before the Court is Defendant Wachovia Bank, N.A.'s Motion to Dismiss the Amended Complaint. (Def.'s Mot. Dismiss, ECF No. 15.) For the following reasons, the Motion will be granted.

**I.   BACKGROUND**

   **A.   Factual Background**[1]

In 1993, Defendant Wachovia Bank's ("Wachovia") predecessor, Hamilton Bank, extended a $3,000,000 line of credit to Plaintiff Adams County Asphalt Company ("ACA"). (Am. Compl. ¶ 3., ECF No. 9.) As collateral, Hamilton Bank obtained a $1,000,000 mortgage on several parcels of land owned by Plaintiffs. (*Id*.) Plaintiffs allege that ACA made payments on the loan, but did not receive proper credit for such payments. (*Id.* ¶ 4.) Because the bank denied receiving any payments on the loan, it refused to release its security interest in the properties. (*Id.*)

---

[1] "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

ACA and Gemini Trust filed for bankruptcy in 2003 and 2005, respectively. (*Id.* ¶ 9.) The bank, by then known as Wachovia, asserted a proof of claim in the ACA bankruptcy in the amount of $1,968,085.66 and filed objections in both the ACA and Gemini Trust bankruptcy actions. (*Id.* ¶ 11.) Plaintiffs filed objections to Wachovia's proof of claim. (Am. Compl. Exs. B, C.) In October 2005, the Bankruptcy Court modified an automatic stay provision to allow the bank to proceed with a 1998 lawsuit that it had filed in the Court of Common Pleas of Dauphin County. (Def.'s Mot. Dismiss 1-2.) In 2006, after a bench trial, the court entered judgment in favor of the bank on the line of credit and on another $100,000 loan in the total amount of $1,849,272, plus $202,284 in attorney's fees. (*Id.* Ex. B.) On August 17, 2007, the Superior Court of Pennsylvania affirmed the judgment. (*Id.* Ex. C.)

While the bankruptcy proceedings were pending, Plaintiffs attempted to sell certain properties that were encumbered by Wacovia's mortgage liens. (Am. Compl. ¶¶ 17-18.) Plaintiffs offered Wachovia a $1,000,000 cash bond replacement security, which the bank declined. (*Id.* ¶¶ 19, 28.) Plaintiffs allege that in 2006, Wachovia filed a mortgage satisfaction piece and did not inform Plaintiffs. (*Id.* ¶¶ 22, 23.)

As a result of the bankruptcy proceedings and Defendant's refusal to substitute its interest in the properties for a cash bond, Plaintiffs claim that business opportunities for ACA and Plaintiff Gemini Equipment Company ("Gemini Equipment") were lost. Specifically, the following existing or prospective business contracts were impaired: PennDOT Route 81 (rest area), Cameron Street and Elmerton Avenue (roadway widening), Cumberland Valley High School, Fairview Township Authority (sewer line extension and paving), Paxton Street (paving), and PennDOT prequalification for future years. (*Id.* ¶ 5.)

2

Plaintiffs also allege that they entered into an asset purchase agreement in 1995 under which ACA and Gemini were to sell property to Pennsy Supply, Inc. ("Pennsy"), and that Pennsy was to pay $500,000 at closing. (*Id.* ¶ 33.) Plaintiffs claim that Wachovia wrongfully and intentionally deposited funds into Pennsy's account, and that Pennsy proceeded to use the funds. (*Id.*) Because ACA did not receive credit for its sold assets, its ability to secure performance and payment bonds was severely hampered. (*Id.*)

Finally, Plaintiffs allege that in 1986, the bank made misrepresentations and improperly withheld information from Plaintiff Robert M. Mumma, II ("Mumma") regarding his right to purchase Pennsy stock and the Bank "allowed" the stock to be sold to a third party for a much higher value. (*Id.* ¶ 41.)

### B.   Procedural History

On November 6, 2008, Plaintiffs Robert M. Mumma, II, Robert M. Mumma, II, successor in interest to the Robert M. Mumma, II Grantor Retained Annuity Trust ("Mumma Trust"), Gemini Equipment, Gemini Equipment Company Business Trust ("Gemini Trust"), and ACA filed a Praecipe to Issue Writ of Summons in the Court of Common Pleas of Philadelphia County. (Praecipe, ECF No. 1 Ex. A.) On October 1, 2009, Plaintiffs filed a Complaint, which included claims for Intentional Interference with Prospective and Existing Contractual Relations (Counts I and II), Fraud (Count III), Negligence (Count IV), and Restatement (Second) of Torts § 870 (Count V). (ECF No. 1 Ex. B.) Defendant removed the case to this Court on October 15, 2009, citing the federal diversity statute as the basis for jurisdiction. (ECF No. 1.) Plaintiffs did not contest removal.

On November 20, 2009, Defendant filed a Motion to Dismiss the Complaint.  (ECF No. 5.)  After several agreed-upon stipulations (ECF Nos. 6-7), Plaintiffs filed an Amended Complaint on January 11, 2010.  (ECF No. 9.)  On February 12, 2010, Defendant filed the instant Motion to Dismiss the Amended Complaint.  (Def.'s Mot., ECF No. 15.)  Plaintiffs responded to the Motion on March 1, 2010.  (Pls.' Resp., ECF No. 16.)  Defendants filed a reply brief on March 19, 2010.  (Def.'s Reply, ECF No. 18.)  We solicited supplemental memoranda from the parties on the constitutionality of 42 Pa. Cons. Stat. § 5524(3).  The parties filed supplemental memoranda.  (Def.'s Supp. Mem., ECF No. 19; Pls.' Supp. Mem., ECF No. 20.)

All papers filed on behalf of Plaintiffs in this matter were filed by Maurice R. Mitts, Esq., and Evan B. Barenbaum, Esq., of the law firm of Mitts Milavec, LLC.  On April 22, 2011, Mitts and Barenbaum moved to withdraw from the representation because Plaintiffs had failed to tender appropriate fees, and because the relationship had "become hostile and antagonistic." (Mot. to Withdraw 3, ECF No. 21.)  On June 30, 2011, the Court granted this motion and Plaintiffs were given thirty days to substitute counsel.  (ECF No. 24.)  Plaintiff Robert M. Mumma II advised that he was proceeding pro se.  (Order ¶ 2 n.1, ECF No. 26.)  The remaining Plaintiffs were to be represented by John M. Kerr, Esq., who advised via letter dated August 16, 2011, that he was in the process of seeking admission in the Eastern District of Pennsylvania. Kerr never filed a notice of appearance with this Court.  The parties were advised that the Court would adjudicate the Motion to Dismiss based upon the papers already filed.  Since that time, several years have passed and the Court has heard nothing from the parties.  (ECF No. 34.)

4

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a

5

"'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.   DISCUSSION[1]

Plaintiffs' Amended Complaint raises five claims.  First, Plaintiffs seek relief for Defendant's intentional interference with prospective contractual relations (Count I).  (Am. Compl. ¶¶ 25-31.)  Second, Plaintiffs claim that Defendant intentionally interfered with existing contractual relations (Count II).  (*Id*. ¶¶ 32-39.)  Third, Plaintiffs claim that Defendant is liable for fraud (Count III).  (*Id*. ¶¶ 40-47.)  Fourth, Plaintiffs claim that Defendant is negligent (Count IV).  (*Id*. ¶¶ 48-54.)  Finally, Plaintiffs assert that Defendant should be held liable under a theory of prima facie tort as articulated in Restatement (Second) of Torts § 870 (Count V).  (*Id*. ¶¶ 55-63.)

### A.   Counts I & II: Intentional Interference with Prospective or Existing Contractual Relations

Defendant argues that Plaintiffs' claims for intentional interference with prospective or existing contractual relations are barred by the statute of limitations, and that Plaintiffs fail to

---

[1] We note that Plaintiff Mumma has instituted several cases in federal court, and has been cautioned against filing "frivolous, repetitive, or otherwise abusive appeals" with the Third Circuit.  *Mumma v. Bobali Corp.*, 382 F. App'x 209, 210 (3d Cir. 2010).  His legal contentions have been likened in the past to "a collection of facts patched together in a Frankenstein-like gallimaufry . . . ."  *Mumma v. High-Spec, Inc.*, No. 09-1447, 2009 WL 4723258, at *1 (M.D. Pa. Dec. 2, 2009).  His claims here are no different.  Nevertheless, we will attempt to find and review every reasonably plausible factual inference that we can in testing the legal sufficiency of Plaintiffs' claims.

allege sufficient facts to state a claim.  Defendant also argues that its alleged actions were privileged and cannot support a claim for intentional interference with contractual relations.

> 1.     *Statute of Limitations*[2]

Pennsylvania courts apply the two-year statute of limitations of 42 Pa. Cons. Stat. § 5524(3) to tortious interference with contractual relations claims.  *CGB Occupational Therapy v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004).  "The statute of limitations begins to run when the underlying cause of action accrues."  *Id.* (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).  "The Pennsylvania Supreme Court and this Court have repeatedly admonished, however, that a statute of limitations begins to run only once a plaintiff can assert and maintain an action."  *CGB Occupational Therapy*, 357 F.3d at 383.  Under Pennsylvania law a claim accrues "'at the occurrence of the final significant event necessary to make the claim suable.'"  *Id.* (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 136 (3d Cir. 1998).  The statute of limitations begins to run when the plaintiff is actually harmed by a defendant's conduct, not when the amount of damages becomes apparent.  *Adamski v. Allstate*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999).

Plaintiffs filed their praecipe for writ of summons in the Court of Common Pleas on November 6, 2008.  (Praecipe.)  Due to the two-year statute of limitations, any harm stemming from Defendant's interference in Plaintiff's prospective contracts arising prior to November 6, 2006 is time-barred.  Plaintiffs first contend that Defendant intentionally impaired their ability to

---

[2] "While ordinarily a statute of limitations defense cannot be raised by way of a Federal Rule of Civil Procedure 12(b)(6) motion, the Third Circuit has noted that an exception is made where the complaint on its face demonstrates noncompliance with the limitations period." *Mumma v. High-Spec, Inc.*, No. 09-1447, 2009 WL 4723258, at *4 (M.D. Pa. Dec. 2, 2009) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n. 1 (3d Cir. 1994)).

secure work and work-related bonds through vindictive acts that left them with little choice but to file for bankruptcy. (Am. Compl. ¶¶ 26-30.) The bankruptcies are the actual harms that prevented Plaintiffs from securing further work. Plaintiffs state that ACA filed for bankruptcy in 2003 and Gemini filed for bankruptcy in 2005. (Am. Compl. ¶ 9.) It is readily apparent that all of Plaintiffs' harms are alleged to have accrued before November 6, 2006. Accordingly, the claims are time barred.

Plaintiffs next argue that Defendant interfered with existing contractual relations when it mishandled a $500,000 deposit related to an August 1995 purchase agreement. (*Id.* ¶ 33(a).) In addition, Plaintiffs make reference to Defendant's contractual interference in a real estate offering that occurred in November 2006. There are no allegations of contractual interference with existing contracts post-dating 2006. (*Id.* ¶¶ 17-34.) It is clear that any contractual interference claim pertaining to the August 1995 purchase agreement is far outside the two-year statute of limitations.

Warranting further analysis is whether a claim involving the November 2006 real estate transaction is timely. With regard to the November 2006 real estate transaction, Plaintiffs allege that Defendant "derailed the real estate sale to Mann Realty for Mr. Mumma and his family's interest in the Bobali Drive warehouse." (Am. Compl. ¶ 34.) Even if the contract for sale of the property occurred on or after November 6, 2006, the alleged harm preventing the sale— Defendant's mortgage interest in the property—was created on June 11, 1993. Therefore, the actual alleged harm occurred more than 13 years before Plaintiff entered into any real estate contract for the property.

## 2. *Failure to State a Claim*

If Plaintiffs are alleging that they weren't harmed until Defendant refused to switch its mortgage on the property for a posted cash bond on November 13, 2006, Plaintiffs' contractual interference claim fails as a matter of law.  In Pennsylvania, a cause of action for tortious interference with contractual relations contains four elements:

> (1) the existence of a contractual, or a prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

Despite Plaintiffs' contention that Defendant's financial position would have been improved by accepting a $1,000,000 cash bond as collateral in exchange for a release of the property liens (Am. Compl. ¶ 19), Defendant was under no obligation to release its interest in the property for substitute consideration.  Merely retaining its property mortgage right to protect its claimed interest can hardly be said to be a purposeful action on behalf of Defendant specifically intended to harm Plaintiffs' contractual relationship with a third party.

Furthermore, Plaintiffs have failed to assert plausible facts to infer that Defendant was not privileged in interfering with the alleged real estate contract.  *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009) ("[I]n Pennsylvania, a plaintiff must prove that the defendant was not privileged or justified in interfering with its contracts: 'While some jurisdictions consider a justification for a defendant's interference to be an affirmative

defense, Pennsylvania courts require the plaintiff, as part of his prima facie case, to show that the defendant's conduct was not justified.'" (citing *Triffin v. Janssen*, 626 A.2d 571, 574 n. 3 (Pa. Super. Ct. 1993)). "Interference is [] privileged when the actor believes in good faith that his legally protected interest may otherwise be impaired by the performance of the contract." *Schulman v. J.P. Morgan Inv. Mgmt., Inc.*, 35 F.3d 799, 810 (3d Cir. 1994) (citation omitted).

Here, Plaintiffs allege that Defendant obtained a $1,000,000 mortgage as collateral for a $3,000,000 line of credit (Am. Compl. ¶ 3), declined to release the liens (*id.* ¶ 19), and objected to various filings in the bankruptcy proceedings of ACA and Gemini (*id.* ¶ 13). Although Plaintiffs assert that Defendant knew that it did not have a valid claim against the collateral in question, they outline no plausible facts from which to conclude that the bank did not act in good faith in protecting its financial interests. Moreover, judgment was entered in favor of Defendant on the line of credit for an amount well over $1,000,000.[3] (Def.'s Mot. Dismiss Ex. B.) Conclusory allegations of bad faith do not erase Defendant's privilege to maintain its interests in the properties. Even if Plaintiffs' contractual interference claim relating to the November 2006 real estate transaction was timely, they fail to assert any facts to support a plausible claim on which relief can be granted. Accordingly, Count II of Plaintiff's Amended Complaint will be dismissed.

---

[3] In testing the legal sufficiency of a claim on a motion to dismiss, "[w]e may [] consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver*, 38 F.3d at 1385 (citation omitted). "Judicial proceedings constitute public records [and we] may take judicial notice of another court's opinions." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

### B. Count III: Fraud

Defendant argues that Plaintiffs' fraud claim is barred by the statute of limitations, and is not pleaded with sufficient particularity.

#### 1. *Statute of Limitations*

"The statute of limitations for fraud in Pennsylvania is two years." *Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 F. App'x 811, 818-19 (3d Cir. 2004) (citing *Ingenito v. AC & S, Inc.,* 633 A.2d 1172, 1174 (Pa. Super. Ct. 1993)). Although an aggrieved party may not have discovered the alleged fraud until a much later date, they "must still bring their claim within two years of when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 148 (3d Cir. 1997).

Here, Plaintiffs allege that sometime in or after 1986, Defendant fraudulently concealed that Plaintiffs had the right to purchase $2,500,000 of Pennsy stock because Defendants preferred to sell the stock to a third party for a greater amount. (Am. Compl. ¶ 41.) Plaintiffs contend that their right to procure the stock was recognized under Pennsy bylaws. (*Id.*) Although Plaintiffs avoid describing when they learned of the alleged fraud, public records indicate that Plaintiff Mumma believed that he had been denied an option to purchase Pennsy stock by 1999:

> Mumma filed [a] lawsuit in 1999 against CRH, Pennsy, Lisa M. Morgan, Barbara McKimmie Mumma, Linda Mumma Roth, the law firm of Morgan, Lewis & Bockius, and the law firm of Stradley Ronon Stevens & Young (collectively "defendants"). He averred herein that the named defendants, individually and collectively, fraudulently concealed documents and information that would have resulted in Mumma's refusal to consent to the 1993 sale of Ninety–Nine [formerly known as Pennsy] to CRH. Mumma specified two documents that were allegedly concealed from him: 1) a Pennsy shareholders' agreement dated December 29,

11

> 1961, *which purportedly gave Mumma the option of purchasing Pennsy stock at face value*; and 2) a shareholders' agreement dated August 1, 1993.

*Mumma v. CRH, Inc.*, No. 707 MDA 2015, 2016 WL 509726, at *1 (Pa. Super. Ct. Feb. 5, 2016) (emphasis added).

Even if Plaintiffs did not actually discover Defendant's allegedly fraudulent activity in preparing for the 1999 case, it should have been discovered through the exercise of due diligence. Here, by 1999, Plaintiff Mumma was aware that his alleged option to purchase Pennsy stock had been concealed. Limited investigation would have revealed who actively concealed the shareholders' agreement from Plaintiffs. *See Beauty Time*, 118 F.3d at 144 ("[T]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and suggest investigation" (citing *Urland v. Merrell-DowPharms.*, 822 F.2d 1268, 1271 (3d Cir. 1987)). We are satisfied that Plaintiffs have not brought their claims within the two-year statutory period of when they should have discovered the alleged fraud.

### 2. Failure to State a Claim

Assuming for a moment that Plaintiffs had brought their fraud claim within the statutory period, it could not survive Defendant's specificity challenge, because it has not been pleaded with sufficient particularity.

> Under Pennsylvania law, fraud consists of the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; [and] (5) justifiable reliance on the misrepresentation . . . .

*Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 566-67 (E.D. Pa. 2003) (citing *Gibbs v. Ernst,* 647 A.2d 882, 889 (Pa. 1994)). Independent of the standard applicable to Rule 12(b)(6), Rule 9(b)

12

requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citing *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of [] fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props.*, 311 F.3d at 217.

Here, Plaintiffs aver that Defendant withheld pertinent information from them because it "sought to allow the Pennsy stock to be sold for a much higher value to a third party so that the proceeds from such sale would be deposited with the bank . . . ." (Am. Compl. ¶ 41.) All Plaintiffs offer is a set of barebones conclusions that are more akin to a detrimental reliance claim than one sounding in fraud—that Plaintiffs relied on information about the sale of Pennsy stock to their detriment. What Plaintiffs fail to allege is what representations Defendant actually made, how it had knowledge of the falsity of its claims, why Defendant was under a duty to apprise Plaintiffs of their own shareholder rights, and why Defendant was responsible for "allowing" the Pennsy stock to be sold to a third party. Moreover, the Superior Court of Pennsylvania has already concluded that because the shareholder agreement and/or bylaws to which Plaintiffs refer were rescinded by a subsequent agreement, "Mumma never had an option to purchase Pennsy stock at face value." *Mumma*, 2016 WL 509726, at *1 (citing *Mumma II v. Pennsy Supply, Inc.*, 833 A.2d 1156 (Pa. Super. Ct. 2003)). If Plaintiff Mumma never had the

13

right to purchase the Pennsy stock under the shareholder agreement or bylaws, withholding information about such a non-right could not give rise to a fraudulent act.  Count III of Plaintiffs' Amended Complaint will be dismissed.

### C.    Count IV: Negligence

Defendant argues that Plaintiffs' negligence claim is barred by the statute of limitations, and that it does not allege a duty owed by Defendant or a breach of any such duty.  In addition, Defendant contends that Plaintiffs are impermissibly asserting an intentional tort or breach of contract claim as one sounding in negligence.

#### 1.    Statute of Limitations

> In Pennsylvania, a cause of action for negligence is controlled by the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(2).  The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations.

*Montanya v. McGonegal*, 757 A.2d 947, 950 (Pa. Super. Ct. 2000) (citation omitted).

Here, Plaintiffs incorporate preceding facts into their negligence claim without averring further injury.  As we have already discussed *supra*, all of Plaintiffs' preceding claims are time-barred.  Therefore, an action sounding in negligence in which Plaintiffs fail to allege any new injury occurring on or after November 6, 2006 must be dismissed as untimely.

#### 2.    Failure to State a Claim

Even if Plaintiffs' negligence claim was timely, it must still be dismissed for failing to allege sufficient facts to support a legally cognizable claim.  To assert a negligence claim, Plaintiffs are "required to establish: a legally recognized duty or obligation owed them by [Defendant]; a breach of that duty; a causal connection between the breach of duty and the

resulting injury; and actual loss or damage suffered by plaintiffs." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. Ct. 2010) (citation omitted).  Generally, "a negligence claim cannot be pursued without physical harm to person or property; purely economic losses are not sufficient." *Pa. State Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 320 (M.D. Pa. 2005).  However, the Pennsylvania Supreme Court "seems to view the economic loss doctrine as closely related to the gist of the action doctrine since it will allow a tort action to lie if the plaintiff can show a breach of a duty arising independently of any contractual obligation." *Id.* at 328 (internal citation omitted).

> Persuasive authority interpreting Pennsylvania law [states] that the doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where "the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Am. Stores Props, Inc. v. Spotts, Stevens & McCoy, Inc.*, 651 F. Supp. 2d 349, 355 (E.D. Pa. 2009) (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).

   Here, Plaintiffs allege that Defendant owed them "duties of care not to assert claims against them which the Bank knew, or should have known, were legally unjustified."  (Am. Compl. ¶ 41.)  Plaintiffs offer no guidance concerning from where Defendant's duty arose.  In accordance with Pennsylvania common law, we are left to conclude that any duty Defendant owed Plaintiffs flowed from contractual obligations.  *See, e.g., Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 583 (E.D. Pa. 2004) ("Pennsylvania common law [] supports the proposition that the duties a bank owes to its customers are created through contract rather than tort."); *McGuire v. Shubert*, 722 A.2d 1087, 1091 (Pa. Super. Ct. 1998) ("[I]t is established in

15

Pennsylvania that the legal relationship between a financial institution and its depositors is based on contract."). Certainly, the obligations and interests involved in the $3,000,000 line of credit and the secured properties sounded in contract. Plaintiffs have pleaded no facts allowing us to plausibly conclude that Defendant's liability stemmed from any other obligation. Therefore, Plaintiffs' negligence claim will be dismissed. *See Woods v. ERA Med LLC*, No. 08-2495, 2009 WL 141854, at *7 (E.D. Pa. Jan. 21, 2009) (dismissing a negligence claim under the "gist of action doctrine" because plaintiff failed to allege any facts to suggest defendant owed anything other than a contractual duty).

### D. Count V: Prima Facie Tort

Plaintiffs' final claim seeks relief pursuant to a general intentional tort theory found in Restatement (Second) of Torts § 870. (Am. Compl. ¶¶ 55-63.) Defendant argues that this claim lacks basis because Pennsylvania does not recognize a prima facie tort as outlined in § 870 of the Restatement.

The cause of action of intentional or prima facie tort provides that "[o]ne who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." Restatement (Second) of Torts § 870. We need not look to the factual allegations of Plaintiffs' claim here because "Pennsylvania has not yet adopted intentional or *prima facie* tort as set forth in § 870 of the Restatement."[4] *D'Errico v. DeFazio*, 763 A.2d 424, 433 (Pa. Super. Ct. 2000). Furthermore, "the great majority of federal district courts, several of which engaged in a lengthy examination

---

[4] This is not to say that Plaintiffs have met the § 870 standard. There are no alleged facts from which to conclude that Defendant's acts of filing a proof of claim and declining to release property liens were unjustifiable under the circumstances.

of the issue . . . have uniformly concluded that the Pennsylvania Supreme Court would not recognize such a cause of action under Pennsylvania law." *Cotner v. Yoxheimer*, No. 07-1566, 2008 WL 2680872, at *7 (M.D. Pa. July 2, 2008). Pennsylvania courts have declined to entertain an independent claim for intentional tort, and we find no basis from which to conclude that the Pennsylvania Supreme Court would recognize such an action. Accordingly, Count V of Plaintiffs' Amended Complaint will be dismissed. *See Keating v. EquiSoft, Inc.*, No. 11-0518, 2014 WL 4160558, at *8 (E.D. Pa. Aug. 22, 2014) ("The Court agrees with the vast majority of courts determining this issue and concludes that intentional tort is not a cognizable legal theory in Pennsylvania.").

### E. Amendment of the Complaint

Generally, when a plaintiff's complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). We conclude that in this case, amendment of Plaintiffs' Complaint would be futile. No further amendments to the Complaint would permit Plaintiffs to successfully state a claim for relief based on these facts.

## IV. CONCLUSION

For the foregoing reasons, Defendant Wachovia Bank, N.A.'s Motion to Dismiss the Amended Complaint will be granted.

An appropriate Order follows.

                                                  **BY THE COURT:**

                                                  _____
                                                  **R. BARCLAY SURRICK, J.**